LAURA E. DUFFY
United States Attorney
EMILY W. ALLEN
Special Assistant U.S. Attorney
VALERIE H. CHU
Assistant United States Attorney
California State Bar Nos. 234961/241709
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9738/6750
Fax: (619) 546-0450
Email: emily.allen@usdoj.gov
       valerie.chu@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>ADEL AFKARIAN, et al.,<br><br>          Defendants. | Case No. 13CR1469-JAH-DMS_<br><br>UNITED STATES' SECOND CONSOLIDATED RESPONSE IN OPPOSITION TO PETITIONERS' REQUESTS FOR ANCILLARY PROCEEDING |
|---|---|

COMES NOW Plaintiff, the United States of America, by and through its counsel, Laura E. Duffy, United States Attorney, Emily W. Allen, Special Assistant United States Attorney, and Valerie H. Chu, Assistant United States Attorney, and respectfully submits the United States Government's Second Consolidated Response and Opposition to Third Party Petitions filed by (5) Fidelity National Title Group and Chicago Title Company and (6) Paras Shah and Sapana Shah.

**I**

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

**A.  PROCEDURAL HISTORY**

A detailed procedural history and statement of facts, along with supporting exhibits, is set forth in the United States' first Consolidated Motion to Dismiss and Response in Opposition to Petitioners' Requests for Ancillary Proceeding, filed on February 14, 2014 (Dck. No. 64), at 1-14 ("First Consolidated Response").  Here, the United States supplements that statement of facts as relevant to the claims of the two new petitioners.

Defendants Adel Afkarian ("Adel") and Atef Afkarian ("Atef") (together, "Defendants" or "the Afkarians") were indicted on April 18, 2013 for fraud and money laundering, in an indictment which charged, among other things, criminal forfeiture under 18 U.S.C. §§981(a)(1)(C), 982(a)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).  The indictment sought proceeds traceable to the charged offenses, property involved in those offenses, and substitute property.  Indictment (Dkt. No. 1).  Both defendants pled guilty on September 23, 2013, and, as part of their plea agreements, agreed to forfeit the real property identified as 6964 Santa Fe Canyon Place, San Diego, California ("Santa Fe Canyon" or "Forfeited House"), and $388,062.18 derived from two HSBC Bank checks, which had been funded by proceeds of the offense ("Forfeited Checks").  See Plea Agreements (Dkt. Nos. 37, 38).

The Court entered a preliminary Order of forfeiture on December 20, 2013, authorizing the United States to take custody of the Forfeited House and the Forfeited Checks (together, "Forfeited Properties") (Dkt. No. 45).  The United States published notice of its

2

intent to dispose of the properties, in order to adjudicate any third-party interests. Initially, four groups of third parties filed petitions for an ancillary hearing, claiming some interest in one or both of the Forfeited Properties. Petitioners Babak Mottale and Michael Mottale ("the Mottales"), the sellers of the Via Capri property, alleged they held legal title to funds traceable to both Forfeited Properties (Dkt. No. 47). Petitioner Fletcher Hills Town & Country, a secured creditor that holds a $164,569 judgment against Atef, also claimed an interest in both Forfeited Properties (Dkt. No. 50). Petitioner Iraj Afkarian ("Iraj"), Defendants' father and the owner of the HSBC accounts which were converted to the HSBC bank checks, claimed an interest in the Forfeited Checks (Dkt. No. 52). The United States moved to dismiss each of these three claims in its First Consolidated Response.

Petitioners Paul Hashemi, Noorjahan Hashemi, and William Simon (together, "the Hashemis"), the buyers of property located at 6062 Soledad Mountain Drive in La Jolla, California, claimed an interest in both Forfeited Properties, arguing that Defendants defrauded them of $710,000 that was then used to acquire the Forfeited Properties (Dkt. No. 55). With regard to this claim, the United States agreed that the Hashemis, as victims of the fraudulent scheme, could be entitled to recover traceable assets as beneficiaries of a constructive trust. See First Consolidated Response at 26-29.

Two new petitioners have now asserted an interest in the Forfeited Properties, claiming to be beneficiaries of a constructive trust. Petitioners Fidelity National Title Group and Chicago Title Insurance Company (hereinafter, "Fidelity"), which insured the Hashemis' purchase of Soledad Mountain Drive, argue that Fidelity is,

3

like the Hashemis, a beneficiary of the constructive trust that was created upon the Defendant's fraudulent transfer of the purchase funds (Dkt. No. 78). Petitioners Paras Shah and Sapana Shah (together, "the Shahs"), the buyers of property located at 3414 Caminito Santa Fe Downs in Del Mar, California, argue that Defendants defrauded them of marketable title to the home and used the proceeds of the fraudulent sale to acquire the Forfeited Properties (Dkt. No. 80).

**B.    ADDITIONAL FACTS RELEVANT TO THE NEW PETITIONERS**

   **1.    Fidelity Insured the Hashemis' Purchase of 6062 Soledad Mountain Drive, La Jolla**

As described in the First Consolidated Response, Mehran Abazary and Soheila Ferdowsi owned 6062 Soledad Mountain Drive in La Jolla, California, subject to approximately $2,249,803 in liens extended by Indymac. Abazary, who was underwater, hired Atef to help sell Soledad Mountain Drive. The Afkarians and their business associates manufactured purportedly clean title by filing fraudulent deeds and other documents so that it would appear that Indymac's interest in the property had been extinguished and that Abazary owned the property free and clear of any liens. Abazary and Ferdowsi eventually deeded the property to "Madrone Holdings LLC," an entity controlled by the Afkarians and their business associates. The Hashemis, apparently unaware of the fraudulent deed transfers and the existing IndyMac liens, and relying on a clean title report, purchased the property on July 21, 2011. Their purchase was insured by Fidelity, which guaranteed clear title to the property. After the fraud was discovered and Indymac's successor sought to recover its uncollected debt, title to the home became the subject of an ongoing civil lawsuit. According to Fidelity, a settlement is pending which, if

4

finalized, would result in the Hashemis paying approximately $90,000 and Fidelity paying approximately $1.6 million to obtain clear title. Dkt. No. 78, at 4.

As described in the First Consolidated Response, the Afkarians deposited the proceeds of the fraudulent sale of Soledad Mountain Road into the same US Bank account that received another $1 million in proceeds of the fraudulent sale of a third property, Via Capri. The funds from this account were eventually used to purchase the Forfeited Checks. None of the funds from this account were used to fund the months-earlier purchase the Forfeited House.

### 2. The Shahs Purchased 3414 Caminito Santa Fe Downs

As described in the First Consolidated Response, Adel Afkarian owned the property at 3414 Caminito Santa Fe Downs subject to a $1,221,000 mortgage from Countrywide and a $250,000 Home Equity Line of Credit ("HELOC") from Washington Mutual ("WaMu"). By May 2010, the home was underwater, and Adel and Atef began the process of manufacturing purportedly clean title by filing fraudulent deeds and other documents so that it would appear that Countrywide's and WaMu's interests in the property had been extinguished and Adel owned the property free and clear of any liens. On October 19, 2010, Adel sold Caminito Santa Fe Downs to the Shahs, who paid a total of $1,080,000 for the home. Adel's brother Atef received approximately $977,269 in proceeds from this fraudulent sale.

Nearly all of the $977,269 in proceeds were sent to Atef's account at US Bank ending in 3049 ("US Bank 3049") on October 20, 2010, after Atef deducted $18,000 in a cashier's check written to Adel. Exh. 11. As described in the First Consolidated Response, Atef used these proceeds to fund his purchase of the Forfeited House.

5

According to the Shahs, on June 29, 2012, they sold Caminito Santa Fe Downs to new buyers William and Penny Chunyk. Dkt. No. 80, at 2. The Chunyks remain the owners of record of the property, although the validity of their ownership has been challenged in a California action for quiet title by Adel's defrauded lender. See Dkt. No. 80, Exh. H.

## II

## ARGUMENT

The two new petitioners claim equitable interests in the Forfeited Properties. As the United States described in its First Consolidated Response, the Hashemis have an equitable interest superior to the Defendants' in the funds traceable to their money. Fidelity, the Hashemis' insurer, has a similar interest in those traceable funds. The Shahs, however, re-sold their interest in Caminito Santa Fe Downs, and, because they no longer claim any ownership of the property, have a more attenuated claim to the Forfeited Properties. Although in theory they could have an equitable interest in forfeited property traceable to their money, they would first need to prove that they suffered losses as a result of the pending lawsuit surrounding the Caminito Santa Fe Downs property. At this stage in the proceedings, they have failed to meet that burden.

**A.   PETITIONERS' BURDEN IN ANCILLARY PROCEEDING**

    **1.   Petitioners Bear Burden of Proof**

The Petitioner bears the burden of proof in an ancillary proceeding. See 21 U.S.C. § 853(n)(6). The Petitioner must first establish by a preponderance of the evidence a "legal interest" in the forfeited property sufficient to satisfy the statutory standing requirement in § 853(n)(2). Once the Court determines that the

Petitioner has standing to contest the forfeiture in the ancillary proceeding, it must determine if she is able to prevail on the merits. See United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005) ("the petitioner bears the burden of proving his right, title, or interest under § 853(n)(6)"); United States v. Saccoccia, 354 F.3d 9, 13 (1st Cir. 2003) (burden of proof is on the petitioner); United States v. Gilbert, 244 F.3d 888, 911 (11th Cir. 2001) (the third party, not the government, bears the burden of proving one of the "limited grounds" for recovery by a preponderance of the evidence); United States v. Weidner, 2004 WL 432251, at *5 n.6 (D. Kan. Mar. 4, 2004) ("the petitioner has the burden of proof and must establish his respective interest by a preponderance of the evidence").

The only grounds on which a third party petitioner can prevail in the ancillary proceeding are those set forth in section 853(n)(6)(A) and (B). That is, the Petitioner must establish either (1) that she had a legal right, title or interest in the forfeited property that was superior to the Defendant's interest at the time the property became subject to forfeiture, or (2) that she acquired the property after it became subject to forfeiture as a bona fide purchaser for value who was without reason to know that the property was subject to forfeiture.

**2.   State Law Governs Whether Petitioner Has an Interest**

In evaluating whether a petitioner has a superior interest to the defendant's, the Court looks to the law of the jurisdiction that created the petitioner's property interest to see what interest the petitioner has in the property, and then looks to federal law to see if that interest is sufficient to satisfy the statutory standing requirement in § 853(n)(2) and the grounds for recovery set forth in

7

§ 853(n)(6)(A) and (B). See Nava, 404 F.3d at 1127; United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996).

### 3. California Law Recognizes Equitable Interests

As general rule, victims of an offense have no legal interest in forfeited property; but under state law they may have an equitable interest. According to California law, when a fraud is committed against a victim, a constructive trust arises, with the victim the beneficiary. United States v. $4,224,958.57 (Boylan), 392 F.3d 1002, 1004 (9th Cir. 2004) (citing California Civil Code §§ 2223 and 2224 ("One who gains a thing by fraud . . . is . . . an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it.")); see also Healy v. Commissioner, 345 U.S. 278, 282 (1953) ("[a] constructive trust is a fiction imposed as an equitable device for achieving justice"). When that property is later forfeited, the government "acquire[s] it with the same trust imposed." Boylan, 392 F.3d at 1004.

However, victims have an interest only in traceable assets. United States v. Schwimmer, 968 F.2d 1570, 1583-84 (2d Cir. 1992) ("The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets."); United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985) ("It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer.").

Principles of equity and fairness must inform the Court's administration of a constructive trust, to account for the interests of all the victims. The Court should "tak[e] steps to assure that no

8

claimant obtains more than his or her fair share." Boylan, 392 F.3d at 1005.

**B.    FIDELITY MAY HAVE AN INTEREST IN THE FORFEITED CHECKS AS THE BENEFICIARY OF A CONSTRUCTIVE TRUST**

The Hashemis paid $1,550,000 in return for what they were led to believe was clean title to the Soledad Mountain property. Fidelity insured their purchase, after determining, incorrectly, that the chain of title was clear. In fact, Deutsche Bank (Indymac's successor) still held unsatisfied liens against the property and, after the fraud was discovered, it attempted to assert its interest in the property in the California courts. According to Fidelity, the rightful ownership of the property has not yet been determined, and a proposed settlement has not yet been accepted. See Dkt. No. 78 at 4. If and when the Hashemis and Fidelity pay the proposed judgment in that case, they may be able to satisfy their burden to show that they were victims of, and suffered losses resulting from, the Defendants' fraud.

But Fidelity's and the Hashemis' interests are limited to only traceable assets. Schwimmer, 968 F.2d at 1583-84. Proceeds of the fraudulent Soledad Mountain sale were used to fund a portion the HSBC accounts that generated the Forfeited Checks. But neither Fidelity nor the Hashemis can trace their money to the Forfeited House, which was purchased with proceeds of the fraudulent sale of Caminito Santa Fe Downs in November 2010, eight months before their fraudulent transaction. Petitioner Fidelity, therefore, may be the beneficiary of a constructive trust that arose only with respect to the Forfeited Checks, and only with respect to the portion of those checks that was funded by proceeds of Soledad Mountain. (Proceeds from the fraudulent sale of Via Capri were deposited to the same account.) Accordingly,

9

1 Fidelity would have standing to assert a claim only to that portion of
2 the Forfeited Checks.  The Court should grant Fidelity's request for
3 an ancillary proceeding in part, as it relates to the Forfeited
4 Checks, to give Fidelity and the Hashemis a reasonable opportunity to
5 demonstrate the extent of any losses, and how those losses should be
6 apportioned.

**C.   THE SHAHS HAVE NOT MET THEIR BURDEN TO SHOW THEY ARE BENEFICIARIES OF A CONSTRUCTIVE TRUST**

9 Like the Hashemis, the Shahs paid the Defendants and their
10 associates more than $1 million in return for what they were led to
11 believe was clean title to property.  But unlike the Hashemis, they no
12 longer own the property; they re-sold it to new buyers William and
13 Penny Chunyk, who were also unaware of the Defendants' fraud.  The
14 Shahs do not have any ownership interest in Caminito Santa Fe Downs,
15 and are exposed only to the unquantified risk of a civil judgment
16 arising out of the pending cross-complaint.  Dkt. No. 80, at 2-3.  If
17 the Shahs are ordered to pay a judgment in that case, and if their
18 request for defense and indemnification from their own title insurance
19 company is denied, they may indeed be considered victims of the
20 Defendants' fraud—-along with any other parties that suffer losses as
21 a result of that litigation.  But at this time, the Shahs, who sold
22 Caminito Santa Fe Downs and relinquished their interest for fair
23 market value, have not met their burden to establish standing as
24 victim beneficiaries of a constructive trust.

25 Any future interest that the Shahs might show in Caminito Santa
26 Fe Downs is limited only to only traceable assets.  Schwimmer, 968
27 F.2d at 1583-84.  Proceeds of the fraudulent Caminito Santa Fe Downs
28 sale were used to purchase the Forfeited House.  The Forfeited Checks,

10

on the other hand, were funded solely from the fraudulent sales of Soledad Mountain and Via Capri, as described in detail in the First Consolidated Response.  The Shahs cannot trace their interest to the Forfeited Checks, and that portion of their petition should be dismissed for lack of standing.

## III

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant Fidelity's petition in part and order discovery and an ancillary hearing.  Because the Shahs have failed to meet their burden and establish standing, the United States respectfully requests that the Court dismiss their petition.

DATED:  May 2, 2014            Respectfully submitted,

                               LAURA E. DUFFY
                               United States Attorney


                               _/s/ *Emily W. Allen*_____
                               VALERIE H. CHU
                               Assistant United States Attorney
                               EMILY W. ALLEN
                               Special Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ADEL AFKARIAN, et al.,<br><br>　　　　　Defendants. | Case No. 13CR1469-JAH-DMS_<br><br>CERTIFICATE OF SERVICE |

　　I, Emily W. Allen, am a citizen of the United States and am at least 18 years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101. I am not a party to the above-entitled action. I have caused service of UNITED STATES' SECOND CONSOLIDATED RESPONSE IN OPPOSITION TO PETITIONERS' REQUESTS FOR ANCILLARY PROCEEDING on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them, and/or by email at the email address registered to them with the ECF System:

　　1. Kelsey E. Lewis, for Fidelity National Title Group and Chicago Title Insurance Company; and

　　2. Jaime Sternberg, for Paras Shah and Sapana Shah

　　I declare under penalty of perjury that the foregoing is true and correct.

　　DATED: May 2, 2014　　　　　　　_/s/ *Emily W. Allen*_____
　　　　　　　　　　　　　　　　　　　EMILY W. ALLEN
　　　　　　　　　　　　　　　　　　　Special Assistant U.S. Attorney